UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01005-TMT-KLM

CAROLYN O'NEAL,

      Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FREMONT,
SHERIFF ALLEN COOPER, in his official capacity as the Sheriff of Fremont County,
MICHAEL FETTERHOFF, in his individual and official capacities,
TROY JOHNSTON, in his individual and official capacities,
STEVE SANGER, in his individual and official capacities,
MICHAEL ULRICH, in his individual and official capacities,
RICHARD SOLANO, in his individual and official capacities,
CARRIE HAMMEL, in her individual and official capacities,
CAMERON GONZALES, in his individual and official capacities,
JOSHUA POHL, in his individual and official capacities,
DEBORA BUNCH, in her individual and official capacities,

      Defendants.

---

## ORDER

---

This matter comes before the court on "Defendants' Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(b), or to Alter or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e), Alternatively for a New Trial Pursuant to Fed. R. Civ. P. 59(a), or for Remittitur." (Doc. 138.)  Having considered the motion and related briefing, the court denies in part and grants in part the Motion.  The court concludes Defendants are not entitled to qualified immunity and therefore denies Defendants' Rule

50(b) motion (with the sole exception of the jury's verdict against Debora Lynn for excessive force, which Ms. O'Neal concedes was not supported by the evidence).  As to Defendants' Rule 59(e) motion, the court concludes (1) the jury's punitive damages award on Ms. O'Neal's false arrest claim must be reversed, and (2) the jury's verdict against Fremont County on Ms. O'Neal's claim must be reversed.  Finally, the court concludes Defendants' Rule 59(a) motion should be denied.

## I. Background

This case arises from the warrantless arrest of Plaintiff Carolyn O'Neal on December 16, 2013, on charges of disorderly conduct.  Ms. O'Neal alleged in her complaint that she was dragged forcibly from her home, naked and in full public view, taken to the Fremont County jail where she was assaulted by Defendants, placed in a restraint chair, still naked, and Tased despite being no risk to anyone.

Upon completion of discovery, Defendants moved for summary judgment, which was granted in part and denied in part. (Doc. 71.)  The surviving claims against Defendants included: (1) false arrest in violation of the Fourth Amendment; (2) excessive force related to Ms. O'Neal's detention in violation of the Fourth Amendment; (3) violation of her free speech rights under the First and Fourteenth Amendments; and (4) violation of the right to bodily integrity and privacy in violation of the Fourth Amendment.  These remaining claims were tried to a jury before Judge Wiley Y. Daniel

in April 2019, as a result of which the jury rendered a verdict in favor of Ms. O'Neal on all four claims.[1]  (Doc. 111.)

The jury's total award of $2,995,004 broke down as follows: (1) for false arrest, a total of $450,000 ($50,000 in compensatory damages and $100,000 in punitive damages against each of Defendants Fetterhoff, Johnston, and Sanger); (2) for excessive force, a total of $1,007,504 against Defendants Ulrich ($5,000), Solano ($1), Hammel ($2,500), Gonzales ($1), Lynn ($1), Pohl ($1), and Fremont County ($1,000,000); (3) for First Amendment retaliation a total of $7,500 ($2,500 each against Defendants Fetterhoff, Johnston, and Sanger[2]); (4) for violation of privacy, a total of $1,530,000 against each of the following:

- Fetterhoff ($175,000 compensatory and $75,000 punitive);

- Johnston ($175,000 compensatory and $75,000 punitive)

- Sanger ($175,000 compensatory and $75,000 punitive)

- Ulrich ($100,000 compensatory and $60,000 punitive)

- Solano ($75,000 compensatory and $40,000 punitive)

- Hammel ($100,000 compensatory and $60,000 punitive)

---

[1] As a result of Judge Daniel's passing, this case was reassigned to the undersigned. (Doc. 189).

[2] Defendants do not specifically challenge the jury's verdict on Ms. O'Neal's First Amendment Retaliation claim.

- Gonzales ($75,000 compensatory and $40,000 punitive)

- Lynn ($75,000 compensatory and $40,000 punitive)

- Pohl ($75,000 compensatory and $40,000 punitive).

The court entered a Final Judgment on the jury's verdict on April 11, 2019.  (Doc. 114.)

Defendants argue the verdict should be overturned because each of the individual Defendants is entitled to qualified immunity on the false arrest, excessive force, and privacy claims.  They also argue there was insufficient evidence to support the jury's award of punitive damages against any of the individual Defendants, and that the court erred in giving an "eggshell plaintiff" instruction.  As to the jury's $1,000,000 award on excessive force against Fremont County, Defendants argue the verdict is unsupported by the evidence and the result of passion and prejudice.  Finally, Defendants request in the alternative that this court order a new trial or grant a remittitur.

## II.  Analysis

### A.  Rule 50 Motion

#### 1.  Standard of Review

A court should enter judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable person to find for that party on that issue."  Fed. R. Civ. P. 50(a).  The court must view the evidence and the inferences in the light most favorable to the nonmoving party.  *Tyler*

*v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 812 (10th Cir. 2000).  A motion under

Rule 50 should be granted "only if the evidence points but one way and is susceptible to

no reasonable inferences supporting the party for whom the jury found."  *Ensminger v.

Terminix Int'l. Co.*, 102 F.3d 1571, 1573 (10th Cir. 1996) (internal quotations omitted).

The court cannot weigh evidence, judge witness credibility, or challenge the factual

conclusions of the jury.  *Greene v. Safeway Stores*, 98 F.3d 554, 557 (10th Cir. 1996).

Judgment as a matter of law under Fed. R. Civ. P. 50(b) "should be cautiously and

sparingly granted."  *E.E.O.C. v. Prudential Fed. Sav. & Loan Assoc.*, 763 F.2d 1166,

1171 (10th Cir. 1985).  "Unless the proof is all one way or so overwhelmingly

preponderant in favor of the movant as to permit no other rational conclusion . . .

judgment as a matter of law is improper."  *Greene*, 98 F.3d at 557 (internal quotations

omitted).

### 2.  *Waiver of Qualified Immunity*

Ms. O'Neal argues Defendants have waived qualified immunity because they did

not raise it in their Rule 50(a) motion.  In support, she cites *Marshall v. Columbia Lea

Reg'l Hosp.*, 474 F.3d 733 (10th Cir. 2007), which observed that generally a Rule 50(b)

motion cannot assert grounds for relief not asserted in the Rule 50(a) motion.  *Id.* at 738.

*Marshall* held, however, that on appeal the plaintiff had waived the waiver argument, and

therefore addressed qualified immunity on its merits.

5

As far as this court is aware, no decision of the Tenth Circuit has squarely held that failure to raise qualified immunity in a Rule 50(a) motion precludes the ability to raise it in a post-trial Rule 50(b) motion.[3] This court notes other circuits have held that failure to raise qualified immunity in a Rule 50(a) motion waives the defense in a subsequent Rule 50(b) motion. *E.g., Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010) ("The Defendants' failure to make a pre-verdict motion for judgment as a matter of law under Rule 50(a) on the grounds of qualified immunity precluded them from making a post-verdict motion under Rule 50(b) on that ground."); *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 n.9 (9th Cir. 2009); *Parker v. Gerrish*, 547 F.3d 1, 12-13 (1st Cir. 2008) ("we have held that even if a defendant raises qualified immunity at summary judgment, the issue is waived on appeal if not pressed in a Rule 50(a) motion"). Absent controlling Tenth Circuit authority, however, this court declines to determine whether Defendants have waived qualified immunity—especially given the court is satisfied, as further discussed below, that no such immunity is warranted.

### 3. *False Arrest*

Ms. O'Neal was arrested for disorderly conduct. She claimed the arresting officers, Defendants Troy Johnston, Steve Sanger, and Michel Fetterhoff, violated her

---

[3] In *Burke v. Regalado*, 935 F.3d 960 (10th Cir. 2019), the Tenth Circuit held defendants had waived qualified immunity, but there the defendants failed to raise the defense at either stage. *Id.* at 1003.

constitutional rights by arresting her without probable cause.  The jury found in favor of

Ms. O'Neal.  Defendants argue they are entitled to qualified immunity because they had

"arguable probable cause" for the arrest, and the law was not clearly established at the

time of the incident such that reasonable officers in Defendants' situation would have

known that their conduct violated the Fourth Amendment.  The court is not persuaded.

An individual defendant sued under section 1983 "may raise a defense of qualified

immunity, which shields public officials from damages actions unless their conduct was

unreasonable in light of clearly established law."  *T.D. v. Patton*, 868 F.3d 1209, 1220

(10th Cir. 2017).  "Once an individual defendant asserts qualified immunity, the plaintiff

carries a two-part burden to show: (1) that the defendant's actions violated a federal

constitutional or statutory right, and, if so, (2) that the right was clearly established at the

time of the defendant's unlawful conduct."  *Gutierrez v. Cobos*, 841 F.3d 895, 900 (10th

Cir. 2016) (internal quotation marks omitted).

In the context of a qualified immunity defense to a false arrest claim, the court first

asks whether Defendants had probable cause to arrest Ms. O'Neal.  *Kaufman v. Higgs*,

697 F.3d 1297, 1300 (10th Cir. 2012).  The evidence at trial was sufficient to show that

Defendants effected a warrantless arrest of Ms. O'Neal without probable cause.  An

element of Colorado's disorderly conduct statute is that a person is making a coarse or

obviously offensive utterance, gesture, or display "in a public place."  Colo. Rev. Stat.

§ 18-9-106(1)(a).  Yet the testimony of Defendants Johnston, Fetterhoff, and Sanger established conclusively that Ms. O'Neal was in her apartment at the time they arrested her for disorderly conduct.

Defendants argue that Ms. O'Neal and Judge Daniel in his summary judgment order improperly focused on the public place element of the disorderly conduct statute. Defendants point to a separate section of the disorderly conduct statute that provides a person is guilty of disorderly conduct when he "makes unreasonable noise in a public place or near a private residence that he has no right to occupy."  Colo. Rev. Stat. § 18-9-106(1)(c).  Defendants appear to argue this provision of the statute would confer probable cause where a person is making "unreasonable noise" in her own private residence but is near a different private residence that she has no right to occupy.  They cite no authority for this construction and even if they had, they cite no evidence to support that the circumstances would have given rise to probable cause under subsection (c) of the statute. In fact, Officer Sanger testified they were not responding to a noise complaint, but to a "welfare check."  (Tr. Vol. 2, at 265:4-266:8 ("Q . . . There was no noise complaint that got you out there, was there? A. Not a noise complaint, no.")).  Moreover, there is no evidence other residents of the complex were being disturbed in their own homes.

If the court concludes, as it has here, that probable cause was lacking, the court then must determine whether Ms. O'Neal's rights were clearly established.  This requires

the court to ask whether the officers had "arguable probable cause" for an arrest. *Kaufman*, 697 F.3d at 1300. "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014); *see also Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) ("Probable cause to arrest exists only when the facts . . . within the officers' knowledge . . . are sufficient in themselves to warrant a man *of reasonable caution* in the belief that an offense has been or is being committed" (emphasis added)). The court concludes no reasonable officer could have believed that probable cause existed under the circumstances presented at trial. *See Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). Because it was plain that Ms. O'Neal was in her own residence at the time of her arrest, the Defendants' conclusion they had probable cause to arrest her under the disorderly conduct statute was objectively unreasonable.

Defendants cite to *City and County of San Francisco v. Sheehan*, 575 U.S. 600 (2015), in support of their argument the law was not clearly established at the time of Ms. O'Neal's arrest. In *Sheehan*, the defendants were held entitled to qualified immunity under circumstances that seem at least superficially similar to the instant case. The defendant officers responded to a report of a suicidal woman living in a group home for people dealing with mental illness. The officers, having already been informed that the

9

woman had threatened to kill one of the social workers at the home, gained entrance to the woman's room.  The woman responded to the officers by approaching them with a knife and threatening to kill them, and would not drop the knife even after being pepper sprayed.  *Id.*  The Supreme Court held under these circumstances that it was not clearly established that the defendants' actions constituted a violation of her Fourth Amendment rights.  *Id.* at 1778.  As. Ms. O'Neal correctly notes, in contrast to *Sheehan*, Defendants in this case were called not in response to a threat of violence but to conduct a welfare check, Ms. O'Neal did not threaten any of the Defendants, and she was never in possession of a weapon.  She did nothing to justify an arrest for disorderly conduct.  In short, *Sheehan* does not support Defendants' assertion that they are entitled to qualified immunity.

In sum, the court holds Defendants are not entitled to qualified immunity on the false arrest claim, and denies their motion as to that claim.

### 4.  *Excessive Force*

Defendants also contend Defendants Ulrich, Hamel, Solano, Gonzales, and Pohl are entitled to qualified immunity on Ms. O'Neal's excessive force claim.  She claimed and the jury agreed that the Defendants used excessive force by subjecting her to a stun gun and applying a type of neck hold referred to as "hypoglossal pain compliance."  Defendants' argument boils down to the assertion that Ms. O'Neal's evidence failed to

establish that the use of force against her was objectively unreasonable. *See Graham v. Connor,* 490 U.S. 386, 396 (1989) (setting forth objective reasonableness inquiry). Under *Graham*, the test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case." *Id.* The circumstances to consider include: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

The court finds each of these circumstances weighs in favor of upholding the jury's verdict. The testimony of the Defendants made clear that the need for force was low, the severity of the security problem was low, and the threat Ms. O'Neal posed to the Defendants was virtually non-existent.[4] Defendants confirmed that Ms. O'Neal remained restrained even after she had wiggled her feet free of the restraints and she posed no risk of harm to herself or anyone else. Tr. Vol. 3 at 332-34, 427-30, Vol. 5 at 625-26, 679-82. Although Ms. O'Neal was actively resisting Defendants' efforts to put her feet back into the chair restraints, the circumstances suggest there was little need for those efforts in the first place, and certainly little need for the amount of force Defendants chose to use.

---

[4] The court further notes that Defendant Gonzales was impeached concerning the reasons for placing Ms. O'Neal in a restraint chair in the first place. Tr. Vol. 3, at 376-78.

It appears that Defendants largely agree with this assessment,[5] which perhaps is why Defendants focus their argument on the severity of Ms. O'Neal's injuries. Defendants observe that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  (Doc. 138 at 18 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)).)  In support, Defendants cite several Tenth Circuit decisions finding no excessive force where the court deemed defendants' actions not objectively harmful enough to establish a constitutional violation.

Notably, however, none of the decisions cited by Defendants involved the use of a stun gun.  As one Tenth Circuit decision observed, "although Tasers may not constitute deadly force, their use unquestionably 'seizes' the victim in an abrupt and violent manner."  *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010).  Other Tenth Circuit decisions are in accord.  For example, in *In re Estate of Booker*, 745 F.3d 405 (10th Cir. 2014), the Tenth Circuit concluded the use of a Taser and "carotid neck hold" were disproportionate to the need, where the plaintiff was already handcuffed and restrained.  *Id.* at 424-25.[6]  Such cases make clear that it was clearly established law in this Circuit, as of December 2013, that disproportionate use of a Taser against an already

---

[5] *See, e.g.*, Ulrich Testimony, Tr. Vol. 5 at 680:1-15 (agreeing that if Ms. O'Neal posed no risk of harm to herself or anyone else, then a Taser would be excessive force).

[6] The *Booker* decision was issued in March 2014, three months before the incidents giving rise to the instant lawsuit.

subdued individual is a constitutional violation. *Perea v. Baca*, 817 F.3d 1198, 1204-05 n.4 (10th Cir. 2016).

Undeterred by this precedent, Defendants insist Ms. O'Neal failed to produce any evidence that she was injured by Defendants' conduct, and that absent such evidence, her excessive force claim must fail. Defendants contend, for example, that when she was asked whether the hypoglossal neck hold caused her pain, she responded only that her neck doesn't bend very well because it has plates and screws in it. Tr. Vol. 2 at 88:7-10. The court finds, however, that it was perfectly reasonable for the jury to infer based on Ms. O'Neal's response that it caused pain when a pain compliance technique was applied to her neck, and the pain was probably made worse because her neck has plates and screws in it. Similarly, it was reasonable for the jury to infer that it caused Ms. O'Neal pain when she was Tased by Officer Ulrich. *See Cavanaugh*, 625 F.3d at 665. The court also notes Ms. O'Neal testified that the trauma she suffered at the hands of Defendants was 10 on a scale of 1 to 10, when compared to the many other significant traumas she has suffered in her life. Tr. Vol. 2 at 90:1-9.

The court rejects Defendants' qualified immunity defense on excessive force, and denies their motion on that claim.

### *5. Excessive Force Against Defendant Lynn*

The jury also found Defendant Debora Lynn (formerly known as Debora Bunch) liable for excessive force along with Defendants Ulrich, Hamel, Solano, Gonzales, and Pohl. The jury awarded $1 against Defendant Lynn. The evidence conclusively established, however, that she was not present in the holding cell at the time Ms. O'Neal was subjected to the use of a stun gun and hypoglossal neck hold. Tr. Vol. 3 at 415:20-22 ("Q. Were you present at all for any portion of the events leading up to Ms. O'Neal being tased? A. No."). The video evidence confirms this, and Ms. O'Neal concedes that the jury erred in finding Ms. Lynn liable for excessive force.

Accordingly, Defendants' motion is granted with respect to the excessive force claim against Ms. Lynn.

### *6. Privacy Claim*

Defendants next contend they are entitled to qualified immunity on Ms. O'Neal's claim that they violated her right to privacy under the Fourth Amendment. *See Cumbey v. Meachum*, 684 F.2d 712, 714 (10th Cir. 1982). They argue there was insufficient evidence to support the jury's conclusion that they violated Ms. O'Neal's right to privacy, and that, in any case, it was not clearly established law their actions towards Ms. O'Neal would constitute a constitutional violation. The court disagrees.

The parties stipulated to the jury instruction on Ms. O'Neal's privacy claim. That

instruction stated as follows:

> A person's right to privacy is violated when officials unreasonably expose
> the person's body in front of others. The reasonableness of such official
> actions is measured objectively by examining the totality of the
> circumstances. To determine whether officials acted unreasonably, you
> must consider the scope of the privacy intrusion, the manner in which the
> intrusion is conducted, the justification for the intrusion, and the place in
> which the intrusion is conducted.

Final Jury Instructions at 25 (Doc. 102). The parties agreed to this instruction, and the

court regards it as a correct statement of the law.

Applying that instruction, there was ample evidence to support that Ms. O'Neal's

right to privacy was violated repeatedly from her initial arrest, to her transport to the jail,

to her confinement at the jail. Ms. O'Neal testified she warned the officers that she was

naked before they came into her apartment, and that after they entered the apartment, the

door was left open for others, including other residents of the complex, to see.

Defendants Johnston and Fetterhoff also acknowledged Ms. O'Neal had clothing in the

apartment and that they could have given her a chance to get dressed before arresting her.

Instead, a blanket was thrown over Ms. O'Neal and she was placed into Officer

Fetterhoff's patrol car. Officer Fetterhoff testified that the blanket came off of Ms.

O'Neal in the patrol car, but he did not know whether she had removed it intentionally or

whether it just slipped off.

15

Once at the jail, Ms. O'Neal was placed in a restraint chair with no clothes, although she was given a "suicide smock" that kept slipping off.  The video evidence showed Ms. O'Neal completely naked in the presence of at least four officers as they applied a pain compliance method to her neck and Tased her.  No Defendant could explain why Ms. O'Neal was not given clothes to wear until she had been in the cell for eight hours.  On the basis of this evidence, the jury found that the officers' actions were unreasonable given the totality of the circumstances.  While some juries might have determined otherwise, it cannot be said that no reasonable jury could have found in favor of Ms. O'Neal on this claim.

Defendants argue that even assuming the evidence established a constitutional violation, the individual Defendants are entitled to qualified immunity because the law was not clearly established.  Their argument, however, is based on a false premise. Defendants contend the law was established in December 2013 that "when a detainee renders herself nude" there is no Fourth Amendment violation.  Deft. Reply Br at. 12 (Doc. 178).  Defendants insist "Plaintiff had every opportunity to stay covered up," that she chose not to do so, and that she admitted this at trial.  *Id.* at 11.  But the transcript passage Defendants cited for this assertion does not support it, *see* Tr. Vol. 2 at 108:1-7, and it is unclear how Ms. O'Neal could have made any decision in this regard when, at various points, she was handcuffed with her hands behind her and confined to a restraint

16

chair that bound her arms and hands.  And as mentioned above, Officer Fetterhoff could not tell whether Ms. O'Neal wriggled off the blanket while being transported to the jail, or whether it simply slipped off.  Nor, presumably, do Defendants contend that Ms. O'Neal chose to go without clothes in her jail cell for eight hours.  At best, the evidence was mixed on the factual issue of whether Ms. O'Neal chose to be nude.  The court therefore rejects Defendants' "clearly established law" argument, which is premised on a view of the facts that the jury reasonably rejected.

It was clearly established in December 2013 that the Fourth Amendment protects an individual's right to privacy, and that "in a civilized society, one's anatomy is draped with constitutional protections" absent exigent circumstances.  *Shroff v. Spellman*, 604 F.3d 1179, 1191 (10th Cir. 2010) (quoting *United States v. Afanador*, 567 F.2d 1325, 1331 (5th Cir. 1978)); *see also Chapman v. Nichols*, 989 F2d 393, 395 (10th Cir. 1993); *Hill v. Bogans*, 735 F.2d 391, 394-95 (10th Cir. 1984); *Cumbey*, 684 at 714.  As the Tenth Circuit observed in *Nelson v. McMullen*, 207 F.3d 1202 (10th Cir. 2000), "there are searches more intrusive than the exposure of one's [body] in a public place, but we are hard-pressed to think of more than a few." *Id.* at 1206.  Although there is not a case in the Tenth Circuit whose fact pattern exactly matches the fact pattern in this case, that is not necessary to find that the law was clearly established; "defendants are required to make 'reasonable applications of the prevailing law to their own circumstances.'"

17

*Currier v. Doran*, 242 F.3d 905, 923 (10th Cir. 2001) (quoting *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999)).

The court rejects Defendants' arguments and holds that it was clearly established in December 2013 that their conduct towards Ms. O'Neal violated her Fourth Amendment rights.

### B.  *Rule 59(e) Motion to Alter or Amend the Judgment*

#### 1.  *Standard of Review*

Granting relief pursuant to Rule 59(e) is appropriate to correct clear error or manifest injustice.  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  "Rule 59(e) covers a broad range of motions, and the only real limitation on the type of the motion permitted is that it must request a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment."  Charles Alan Wright, *et al.*, *Fed. Prac. & Proc.* § 2810.1 (3d ed.).

#### 2.  *Punitive Damages*

Defendants contend that assuming the court upholds the jury's verdicts on the false arrest and privacy claims, the corresponding punitive damages awards must be overturned.  Punitive damages claims are available in section 1983 claims and requires an assessment of the defendant's subjective state of mind.  *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989).  Such damages are awardable when the defendant's conduct is

shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others. *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1308-09 (10th Cir. 2003).

"Reckless or callous indifference" requires "the defendant [to] have acted 'in the face of a perceived risk that its actions will violate federal law.'" *Eisenhour v. Weber County*, 897 F.3d 1272, 1281 (10th Cir. 2018) (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999)). In other words, it is necessary "for there to be evidence of an additional required mens rea—that [the defendant] perceived that he was violating [the plaintiff's] federal rights . . . ." *Id.*

### a. False arrest

Defendants argue with respect to the false arrest claim that there was no evidence of evil motive or reckless or callous indifference to Ms. O'Neal's constitutional rights. The court agrees. First, there was no evidence Defendants were motivated by evil motive or intent. There was no evidence, for example, that they had some ulterior motive for arresting Ms. O'Neal. Indeed, Defendants gave unrebutted testimony they had never met Ms. O'Neal prior to the events giving rise to this case. Nor was there any evidence the arrest was motivated by some sort of general bias or prejudice against certain groups.

Second, there is no evidence that Defendants' arrest of Ms. O'Neal was recklessly or callously indifferent to her constitutional rights. The evidence showed at the time of

Ms. O'Neal's arrest, Defendants were acting under the mistaken belief they had probable cause to arrest Ms. O'Neal under the disorderly conduct statute.  There is no evidence from which the jury could have inferred that in acting on that belief, Defendants did so despite a perceived risk the arrest would violate Ms. O'Neal's constitutional rights.  The mere fact of Defendants' mistake, standing alone, is not sufficient.  *See Lavicky v. Burnett*, 758 F.2d 468, 477 (10th Cir. 1985) ("Officials cannot be held for punitive damages simply because they did not know the rules of conduct they should follow. Simple ignorance of the applicable legal rules, even arrogant ignorance, does not by itself indicate reckless or callous indifference to federally protected rights.").

Ms. O'Neal focuses on evidence that Defendants Fetterhoff and Sanger believed they did nothing wrong, and that they disagreed with the judge who dismissed the disorderly conduct charges against Ms. O'Neal.  From this, Ms. O'Neal insists there is "an obvious need" to deter future conduct.  In support, she cites Tenth Circuit case law for the proposition that a court's determination regarding the proper amount of damages may take into account the defendant's conduct during trial.  *Farm Bureau Life Ins. Co v. Am. Nat'l Ins. Co.*, 408 Fed. Appx. 162, 170 (10th Cir. 2011).  That same decision, however, states that litigation-related conduct is irrelevant to the threshold determination of whether any punitive damages are appropriate in the first place.  *Id.* at 170-71.

20

In short, the court holds the jury's punitive damages award on the false arrest claim was not supported by the evidence, and must be overturned.

### b.  Right to Privacy

Defendants also contend the punitive damages award on the right to privacy claim should be overturned.  They premise this argument on their view of the facts, discussed above, that Ms. O'Neal chose not to stay covered up.  The jury, however, rejected this view.  The video evidence, for example, shows multiple officers in Ms. O'Neal's cell while she sits bound in a restraint chair and completely naked.  *E.g.*, Tr. Vol. 3 at 334:17-19 (Testimony of Defendant Gonzales) ("Q. She was completely naked and helpless in that chair, wasn't she? A. Correct.").  The notion that Ms. O'Neal chose not to be covered up is belied by the fact that one of the officers pulled off the smock while they insisted on placing her legs back in the chair restraints.

The evidence also established Ms. O'Neal was not issued jail clothes for eight hours, and that no Defendant was able to explain why.  *E.g.,* Tr. Vol. 5 at 627:8-25 (Testimony of Defendant Solano); Tr. Vol. 3 at 348-49 (Testimony of Defendant Gonzales).  Indeed, Officer Solano testified he had never before seen an inmate put into a cell without any clothes, and he agreed that "there is something wrong with the notion of having [an inmate] sit naked in a cell for eight hours without clothes." Tr. Vol. 5 at 627:14-25.  The jury reasonably could have inferred from this evidence that Defendants

21

perceived a risk they were violating Ms. O'Neal's privacy rights.  The evidence was therefore sufficient to establish that Defendants were recklessly or callously indifferent to Ms. O'Neal's privacy rights.

### 3. Monell *Claim Against Fremont County*

Defendants argue this court should amend the judgment or, in the alternative, grant a new trial on the excessive force claim brought against Fremont County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Defendants argue the jury's $1,000,000 verdict against Fremont County is contrary to the evidence and the result of passion or prejudice.

Concerning the insufficiency of the evidence argument, Defendants argue in their Reply Brief (but not in the Motion itself) that Fremont County cannot be held liable because the individual Defendants did not violate Ms. O'Neal's constitutional rights. Reply Br. at 7 (Doc. 178).  As explained above, however, this court rejected Defendants' arguments as to the jury's verdict on false arrest, excessive force, and violation of privacy claims.  The court therefore rejects Defendants' argument here.

Defendants also argue the evidence did not meet the standards for causation and culpability in order to hold Fremont County liable.  "To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81

F.3d 988, 993-94 (10th Cir. 1996).  This causation requirement helps ensure

municipalities are not held liable under a *respondeat superior* theory—*i.e.*, solely for the

actions of their employees—which the Supreme Court expressly rejected in *Monell*, 436

U.S. at 691.  "Since *Monell*, the Supreme Court has 'consistently refused to hold

municipalities liable under a theory of *respondeat superior*' but nonetheless has imposed

liability upon municipalities when the enforcement of their policies or customs by their

employees causes a deprivation of a person's federally protected rights."  *Dodds v.

Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010) (quoting *Board of County Comm'rs v.

Brown*, 520 U.S. 397, 403 (1997)).  The Tenth Circuit has described this causation

standard as "rigorous."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760,

770 (10th Cir. 2013).

Here, the record establishes Fremont County had in place a policy that was

consistent with standards across the United States.  Tr. Vol. IV at 567:10-22.  Fremont

County's excessive force policy regarding Taser use provided that such devices are

authorized for use "only [when it] *reasonably appears necessary* to control or otherwise

subdue violent or potentially violent individuals."  Tr. Vol. 4 at 565:10-14 (emphasis

added).  As the jury necessarily found with respect to the excessive force claim against

the individual Defendants, their use of a Taser against Ms. O'Neal was *not* reasonably

necessary.  Similarly, Sheriff Beicker testified that according to policy, "the officers are

not trained to use the chair partially.  It's to be used properly, which is a full restraint."

Tr. Vol. 3 at 490:10-17.  There was no evidence, however, that Fremont County's policy

requires a detention officer to apply an unreasonable use of force to fully restrain an

inmate.

In sum, Defendants' unreasonable use of force against Ms. O'Neal severs the

causal chain between Fremont County's policies—which authorize only *reasonable* uses

of force under certain circumstances—and Defendants' unreasonable use of force in this

case.  The fact that Defendants applied an apparently sound general policy in an

unreasonable way to a particular detainee does not give rise to municipal liability under

*Monell*.  *See City of Canton v. Harris*, 489 U.S. 378, 387 (1989) ("Nor, without more,

would a city automatically be liable under § 1983 if one of its employees happened to

apply [a] policy in an unconstitutional manner, for liability would then rest on respondeat

superior.").  Put another way, Fremont County's policies were not the "moving force"

behind the constitutional violation.  *Monell*, 436 U.S. at 694.

Accordingly, this court grants Defendants' motion as to the *Monell* claim against

Fremont County and will amend the judgment accordingly.

### *C.  Rule 59(a) Motion for New Trial*

#### *1.  Standard of Review*

The granting of a motion under Fed. R. Civ. P. 59(a) can be based on any error

which the district court concludes "substantially and adversely affected the party's

rights."  *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008).  A

district court has broad discretion in whether to grant a motion for new trial.  *Harvey by &*

*through Harvey v. General Motors Corp.*, 873 F.2d 1343, 1346 (10th Cir. 1989).

#### *2.  Jury Instruction No. 28*

The court gave the jury the following instruction, colloquially known as an

"eggshell plaintiff" or "thin skull" instruction, over Defendant's objection:

> In determining the amount of Plaintiff's actual damages, you cannot reduce
> the amount of or refuse to award any such damages because of any
> condition of Plaintiff that may have made her more susceptible to injury,
> disability, or impairment than an average or normal person.

Jury Instr. 28 (Doc. 102).  Defendants contend that this instruction encouraged the jury to

render a verdict based on sympathy for Ms. O'Neal and not based on the evidence

presented at trial.  They also argue that such an instruction is unwarranted in cases

involving only psychological or emotional injury.  The court is not persuaded by these

arguments.[7]

---

[7] Notably, Defendants did not present these arguments to Judge Daniel at trial.
Instead, they argued that an eggshell plaintiff instruction does not apply in a section 1983
case.  Tr. Vol. 5 at 778-79.

First, Defendants' complaint that the instruction encouraged the jury to render a verdict based on sympathy or prejudice, clearly misapprehends the purpose of such an instruction.  The eggshell doctrine "provides that a tortfeasor takes its victim as it finds him.  Thus a tortfeasor is fully liable for any damages resulting from its wrongful act even if the victim had a pre-existing condition that made the consequences of the wrongful act more severe for him than they would have been for a person without the condition." *McLaughlin v. BNSF Ry. Co.*, 300 P.3d 925, 934-35 (Colo. App. 2012).  This means, as Instruction No. 28 plainly indicates, that the jury was not permitted to *reduce* the damages because of any of Ms. O'Neal's preexisting conditions—not, as Defendants incorrectly assume, that the jury was permitted to *increase* the damages because of those conditions. Similarly, Defendants' complaint that "none of the Defendants knew Plaintiff or anything about her prior to this incident," Motion at 36, has nothing to do with whether an eggshell plaintiff instruction is warranted.  The rule that "a tortfeasor takes its victim as it finds him" does not depend on whether the tortfeasor knows anything about the victim.

Second, under section 1983, "the level of damages is ordinarily determined according to the principles derived from the common law of torts."  *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986) (citing cases).  The common law clearly supports the application of the eggshell plaintiff doctrine to cases involving psychological or emotional distress.  For instance, although Defendants cited Colorado case law in

26

support of their arguments, they fail to acknowledge that the Colorado civil jury instruction on which Instruction No. 28 was based clearly contemplates its application to cases involving a "mental condition." *See* Colo. Civ. Jury Instr., 6:7 (4th ed.) ("In determining the amount of plaintiff's actual damages, you cannot reduce the amount of or refuse to award any such damages because of any (insert appropriate description, e.g., physical frailties, mental condition, illness, etc.) of the plaintiff that may have made (him) (her) more susceptible to injury, disability, or impairment than an average or normal person."). In addition, Defendants incorrectly assume this case involved solely emotional distress damages. The evidence established that Ms. O'Neal suffered physical injury in addition to emotional trauma. At the time a pain compliance neck hold was applied to Ms. O'Neal, one of her preexisting conditions was the fact that she had plates and screws in her neck.

In short, the instruction was not "legally dubious" as Defendants claim, but well supported by the law and appropriate to the circumstances of the case. Defendants are not entitled to the granting of a new trial on this ground.

### 3. *Request for New Trial Based on Excessive Verdict*

Defendants move for a new trial, arguing the verdict is excessive and against the weight of the evidence. A federal court may set aside a jury verdict if the ends of justice require it. *Holmes v. Wack*, 464 F.2d 86, 88-89 (10th Cir. 1972). Although such a motion

is generally committed to a court's discretion, *Harvey*, 873 F.2d at 1346, they are generally disfavored and should be granted with "great caution." *Oslund v. Mullen*, No. 15-cv-00491-KMT, 2018 WL 1583838, at *1 (D. Colo. Apr. 2, 2018).

In support of their argument that the verdict is the result of passion or prejudice, Defendants repeat the arguments already addressed above, including: there was insufficient evidence of actual damages, the punitive damages awards were not supported by evidence of evil motive or reckless or callous indifference, and the evidence did not support Ms. O'Neal's claim against Fremont County under *Monell*. Defendants contend that "all of this combines to demonstrate" the jury's verdict was the result of passion of prejudice. Except for the *Monell* claim and the punitive damages for false arrest, this court has rejected each of Defendants' other arguments.

In arguing the verdict was excessive, Defendants rely on a decision in which Judge Tafoya, *sua sponte*, set aside a verdict and ordered a new trial. *See Oslund*, 2018 WL 1583838, at *4. But in that case, the jury awarded $5 million in compensatory damages against the only defendant in the case, despite the fact that the evidence plainly showed the defendant was not even at the correctional facility during the incident which led to the plaintiff's injuries. *Id.* at *4. *Oslund* is not remotely similar to the instant case, except to the extent the jury found Defendant Lynn liable for excessive force despite not being in

the holding cell when Ms. O'Neal was Tased.  Even then, however, the jury awarded $1 against Defendant Lynn—not $5,000,000.

In summary, this court holds the verdict (excepting the *Monell* claim and the punitive damages for false arrest) was neither excessive nor against the weight of the evidence.

### 4.  *Request for Remittitur*

In the alternative, Defendants request remittitur.  They argue the jury's damages awards shock the conscience, particularly with respect to the compensatory award of $1,000,000 against Fremont County.  *See O'Gilvie v. Int'l Playtex*, 821 F.2d 1438, 1448 (10th Cir. 1987) ("remittitur is not proper unless the amount of damages awarded is so excessive that it shocks the judicial conscience").  Given this court's ruling on Defendants' Rule 59(e) motion concerning the *Monell* claim, the court regards Defendants' alternative request for remittitur as moot.

## III.  Conclusion

For the foregoing reasons, the court GRANTS Defendants' Rule 50 motion with respect to the excessive force verdict against Defendant Debora Lynn.  The court further GRANTS Defendants' Rule 59(e) motion concerning (1) the jury's punitive damages award against Defendants Johnston, Sanger, and Fetterhoff for false arrest, and (2) the jury's verdict on the *Monell* claim.

The motion is DENIED in all other respects.

DATED: May 18, 2020                              BY THE COURT:


                                                 _s/Timothy M. Tymkovich_
                                                 Hon. Timothy M. Tymkovich